UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DARNELL STEPHENS;<br>BRANDON WALKER; and<br>LEON AVERYTT<br><br>      Plaintiffs,<br><br>v.<br><br>PENNSYLVANIA MACARONI COMPANY;<br>and<br>ROBERT SUNSERI (in his individual<br>capacity).<br><br><br>      Defendants. | Case No. _____2:18-1132_____<br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES Plaintiffs, Darnell Stephens, Brandon Walker, and Leon Averytt by and through their attorney, Nelson D. Berardinelli, and files this complaint alleging as follows:

## I. Nature of the Action

1.      Plaintiffs Darnell Stephens, Brandon Walker, and Leon Averytt bring this action under 42 U.S.C. § 1981.

## II. Jurisdiction and Venue

2.      This action arises under 42 U.S.C. § 1981. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331.

3.      All three Plaintiffs are residents and citizens of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

### III. Parties

4.      Plaintiff, Darnell Stephens, is an African-American adult individual who currently resides in Allegheny County, Pennsylvania.

5.      Plaintiff, Brandon Walker, is an African-American adult individual who currently resides in Allegheny County, Pennsylvania.

6.      Plaintiff, Leon Averytt, is an African-American adult individual who currently resides in Allegheny County, Pennsylvania.

7.      Defendant, Pennsylvania Macaroni Company (hereafter "PMC") is a business corporation.

8.      Defendant, Robert Sunseri is a Caucasian adult individual.   Robert Sunseri also goes by the nickname "Chill."

### IV. Facts

9.      Plaintiff Darnell Stephens began working at PMC in Pittsburgh on or around August, 2017.

10.      Plaintiff Brandon Walker began working at PMC in Pittsburgh on or around July, 2016.

11.      Plaintiff Leon Averytt began working at PMC in Pittsburgh on or around October, 2017.

12.      Robert Sunseri was, at all times relevant hereto, one of Plaintiffs' immediate supervisors at PMC.

13.      Bill Sunseri was, at all times relevant hereto, also a supervisor at PMC.

14. Until approximately mid-March, 2018, Robert Sunseri was one of Plaintiffs' immediate supervisors on the night shift, which shift all three Plaintiffs worked at PMC at all times relevant hereto.

15. While Robert Sunseri was one of Plaintiffs' immediate supervisors at PMC, he made multiple racist comments (and also permitted and thereby tacitly approved of at least one racist comment from one of Plaintiffs' co-workers), including but not limited to the following:

   a. On or about September 11, 2017, Robert Sunseri said to Mr. Stephens, while Mr. Stephens was carrying a red-flavored fruit punch drink, "all you know is that, red juice and grape pop." Later that same day, Wayne Henke (another supervisor of Plaintiffs on the night shift) was speaking to Robert Sunseri about his lunch and Mr. Stephens said "Wayne, what did you eat?" Robert Sunseri then proceeded to say to Mr. Stephens "if it isn't chicken or watermelon you wouldn't know about it."

   b. On or about September 25, 2017, Mr. Stephens was smoking his vape pen (an electronic cigarette). Robert Sunseri said to Mr. Stephens "are you smoking that monkey juice?" Mr. Stephens responded "in reference to what?" Robert Sunseri did not respond to this question. Later in the day, Mr. Stephens was smoking his vape pen again, and Robert Sunseri said "that smells good, is that that monkey juice." This comment was made in front of Mr. Averytt and Mr. Walker. Mr. Stephens then asked "what do you mean by that?" Robert Sunseri responded "you know what I mean." Robert Sunseri also made this comment in front of Mr. Averytt and Mr. Walker.

c. On or about September 29, 2017, after a co-worker lost his candy bar, Mr. Stephens said "nobody should steal from anybody, I don't care if it's a dollar." A Caucasian co-worker of Mr. Stephens then stated that he hated thieves. In response, Robert Sunseri said "see, Black people, well you people are unreasonable." (paraphrased). This comment was also made in front of an additional Caucasian co-worker of Plaintiffs.

d. Around October, 2017, while Mr. Stephens and Mr. Walker were working near each other, Mr. Walker said to Robert Sunseri that he and Mr. Stephens could not locate a particular product. Robert Sunseri responded "if it was a piece of fried chicken, you'd find it."

e. On or about October 10, 2017, Mr. Stephens was talking to Mr. Walker about his girlfriend at the time, who is Caucasian. During this conversation, Mr. Stephens jokingly said to Mr. Walker that he "would soon have a kid." Robert Sunseri then said "mixed babies wouldn't work out." When Mr. Stephens asked why, Robert Sunseri responded "that's how things are supposed to be." (referring to the fact that people should not have interracial babies). Mr. Stephens then said "you're traditional, I forgot you don't believe in that" and then Robert Sunseri said "you're right." (paraphrased).

f. On or about October 16, 2017, in reference to music that a co-worker of Mr. Averytt's had been listening to, Robert Sunseri said to this co-worker in front of Mr. Averytt "oh, playing that nigger music."

g. On or about December 18, 2017, Brian Lefever, a Caucasian co-worker of Plaintiffs, said, in front of Mr. Walker and Robert Sunseri, "if it was up to me, none of you niggers would be working here." Despite the fact that Mr. Lefever made this comment in front of Robert Sunseri (who was, at the time, the immediate supervisor of Mr. Lefever, Mr. Walker, and Mr. Stephens), he did not reprimand Mr. Lefever or express any type of disapproval of his comment in any way. Another Caucasian co-worker of Plaintiff also witnessed this statement. Instead, later in the day (after this occurred), Robert Sunseri, unprompted, told Mr. Stephens and Mr. Walker what Mr. Lefever had said earlier in the day. Robert Sunseri then asked Mr. Walker and Mr. Stephens if they were planning on getting a lawyer.

h. Beginning in approximately early January, 2018, Plaintiffs were informed by Mr. Henke, and multiple co-workers at PMC, that Mr. Sunseri would regularly refer to Plaintiffs as "niggers" when they were not around.

i. On or about the week of February 26, 2018, Robert Sunseri responded to an error committed by Mr. Walker by stating "that's why these niggers are stupid," which comment was made within earshot of Mr. Stephens, Mr. Walker, and Mr. Averytt.

16. Robert Sunseri made the comments described above (and permitted Mr. Lefever to make the comment described above) because Plaintiffs are African-American.

17. The comments that Plaintiffs were subjected to, including but not limited to the comments above, were not welcomed by Plaintiffs.

18. On or around mid-March, 2018, Robert Sunseri was removed from his role as the supervisor of PMC's "night shift," although he continued to work in another capacity after being removed from the night shift.

19. Prior to Robert Sunseri being removed from the night shift in approximately mid-March, 2018, Bill Sunseri and Mr. Henke were made aware multiple times about Robert Sunseri's unlawful racist conduct, beginning in approximately September, 2017, including but not limited to through reports of this unlawful harassment that Plaintiffs made directly to Bill Sunseri and Mr. Henke.

20. In approximately late September, 2017, Mr. Stephens began reporting Robert Sunseri's racist comments to Mr. Henke and Bill Sunseri.

21. After this, Mr. Stephens continued to repeatedly complain about Robert Sunseri's racist conduct to Mr. Henke and Bill Sunseri.

22. In approximately October, 2017, Mr. Averytt also reported Robert Sunseri's racist behavior to Bill Sunseri.

23. Prior to Robert Sunseri being removed from the night shift in mid-March, 2018, Bill Sunseri and Mr. Henke were made aware multiple times about Robert Sunseri's unlawful racist comments.

24. Bill Sunseri and Mr. Henke knew about Robert Sunseri's unlawful racist behavior dating back to approximately September, 2017, at the latest.

25. The unlawful racially-motivated harassment Plaintiffs were subjected to at PMC did not end until approximately mid-March, 2018, when Robert Sunseri was removed from the night shift.

## V. Counts

### Count I – Race Discrimination: Hostile Work Environment
*All Plaintiffs against Defendant PMC only*

26.     All other paragraphs of this complaint are incorporated herein as if set forth at length.

27.     PMC intentionally, willfully, and knowingly subjected Plaintiffs to an unlawful hostile work environment, in violation of 42 U.S.C. § 1981.

28.     PMC subjected Plaintiffs to unlawful severe and pervasive race discrimination in 2017 and 2018, including but not limited to as described in the facts section of this complaint, including but not limited to by and through the unlawful acts and omissions of Robert Sunseri, who was the immediate supervisor of all three Plaintiffs at all times relevant hereto.

29.     PMC is strictly liable for the unlawful acts and omissions of Robert Sunseri, who was a supervisor of Plaintiffs at all times relevant hereto.

30.     PMC intentionally, willfully, and knowingly subjected Plaintiffs to unlawful harassment because Plaintiffs are African-American until approximately mid-March, 2018, including but not limited to by and through Robert Sunseri, who was employed by PMC and who was a supervisor of Plaintiffs at all times relevant hereto.

31.     Bill Sunseri and Mr. Henke were both aware of Robert Sunseri's unlawful racist acts and omissions since on or before approximately September, 2017.

32.     PMC's acts and omissions described in the facts section of this complaint show an intentional, willful, and knowing disregard for Plaintiffs' right to be free from race discrimination in the workplace.

33.     PMC acted intentionally, willfully, knowingly, and with malice in depriving Plaintiffs of their right to be free from race discrimination in the workplace.

34.     Plaintiffs believed their work environment was hostile and abusive as a result of the unlawful acts and omissions of PMC, including but not limited to by and through the acts and omissions of Robert Sunseri (including but not limited to as described in the facts section of this complaint).

35.     A reasonable African-American person in Plaintiffs' positions would find Plaintiffs' work environment at PMC to be hostile and abusive.

36.     As a direct result of PMC's unlawful acts and omissions, Plaintiffs have suffered damages.

37.     PMC's unlawful treatment of Plaintiffs is in violation of 42 U.S.C. § 1981.

**Count II – Race Discrimination: Hostile Work Environment**
*All Plaintiffs against individual Defendant Robert Sunseri (in his individual capacity) only*

38.     All other paragraphs of this complaint are incorporated herein as if set forth at length.

39.     Robert Sunseri intentionally, willfully, knowingly, and with malice subjected Plaintiffs to an unlawful hostile work environment, in violation of 42 U.S.C. § 1981, including but not limited to as described in the facts section of this complaint.

40.     Robert Sunseri intentionally, willfully, knowingly, and with malice harassed Plaintiffs because they are African-American, in violation of 42 U.S.C. § 1981.

41.     Robert Sunseri's acts and omissions (including but not limited to as described in the facts section of this complaint) show an intentional, willful, and knowing disregard for Plaintiffs' right to be free from race discrimination in the workplace.

42.     Robert Sunseri acted with malice in depriving Plaintiffs of their right to be free from race discrimination in the workplace.

43.     Plaintiffs believed that their work environment at PMC was hostile and abusive as a result of Robert Sunseri's unlawful acts and omissions (including but not limited to as described in the facts section of this complaint).

44.     As a direct result of Defendant's unlawful acts and omissions, Plaintiffs have suffered damages.

45.     Robert Sunseri's unlawful treatment of Plaintiffs is in violation of 42 U.S.C. § 1981.

## **<u>Request for Relief</u>**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against the

Defendants for all damages and other remedies for which Plaintiffs are entitled to under 42

U.S.C. § 1981, including but not limited to the following damages as allowed by applicable law:

a.  Compensatory Damages (e.g., emotional pain and suffering damages);

b.  Punitive Damages;

c.  Attorney's fees and costs of litigation; and

d.  Any other legal or equitable relief the Court finds appropriate.


JURY TRIAL DEMANDED.


<u>/s/ Nelson D. Berardinelli</u>
Nelson D. Berardinelli, Esquire
NDB Law Firm, LLC
PA ID: 310581
500 Grant St, Suite 2900
Pittsburgh, PA 15219
Phone: (412) 301-2345
Fax: (412) 301-2238
E-mail: n@ndblawfirm.com
*Attorney for Plaintiffs*
